# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| DAVID B. KARR, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv-00882 |
| vs. | ) ) | (Removed from the Circuit Court of Jackson County, Missouri; |
| KANSAS CITY LIFE INSURANCE COMPANY, | ) ) ) | Case No. 1916-CV26645) |
| Defendant. | ) ) | |

## NOTICE OF REMOVAL

**TO THE CLERK OF THIS COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), and other applicable law, defendant Kansas City Life Insurance Company ("Defendant" or "KCL") hereby removes the case of *David B. Karr v. Kansas City Life Insurance Company*, Case No. 1916-CV26645, filed in the Circuit Court of Jackson County, Missouri ("the State Court Case" or "the *Karr* case"), to the United States District Court for the Western District of Missouri at Kansas City.

**I.      OVERVIEW**

1.     The *Karr* case began as a component part of a 50 state national class action filed and pending in this Court under CAFA's expansive grant of subject matter jurisdiction over such cases. *Meek v. Kansas City Life Insurance Company*, Case No. 4:19-cv-00472-JTM ("*Meek*").

2.     Class counsel herein attempted to jettison Karr and other "Missouri citizens" from *Meek* on October 1, 2019, by means of an amended complaint. A few minutes before they filed the amended complaint in *Meek*, those same lawyers collected those very same Missouri citizens dropped from *Meek* and reconstituted the very same claims verbatim into a petition filed in the

State Court Case on behalf of *only* Missouri citizens. Elevating form—and forum—over substance, class counsel cleverly sought to place the State Court Case beyond CAFA's jurisdictional grant by nominally thwarting minimal diversity, given that KCL is a Missouri corporation with its principal place of business in Missouri.

3. With but a few keystrokes, class counsel in *Meek* inexplicably turned that case into a nearly national, *49 state* class action (still under the CAFA jurisdictional grant) while almost simultaneously walking down the street a one-state constituent slice from *Meek* and filing it in Jackson County, Missouri Circuit Court, presenting it for all the world as a new and independent Missouri-only putative class action hovering just beyond the reach of CAFA.

4. But the CAFA jurisdictional story should not and does not end there.

5. For over 100 years the United States Supreme Court has instructed that lower courts should not "sanction devices intended to prevent a removal to a Federal court where one has that right." *Wecker v. Nat'l Enameling & Stamping* Co., 204 U.S. 176, 186 (1907). More recently, "[The Supreme Court has] . . . interpreted the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) (interpreting CAFA "mass action" criteria) (*citing Wecker*, 204 U.S. at 186); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (In CAFA cases, federal courts should not exalt form over substance when doing so would run directly counter to the objective of CAFA to ensure federal court consideration of interstate cases of national importance); *accord, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case").

6. The Eighth Circuit is no stranger to these principles. *See e.g.*, *Jones v. Mosher*, 107 F. 561, 564 (8th Cir. 1901) ("As the right to remove an action which falls within the jurisdiction of the federal courts is a substantial right, the federal courts . . . should 'be astute not to permit devices to become successful which are used for the very purpose of destroying that right.'" (internal citation omitted)); *Thatcher v. Hanover Ins. Group, Inc.,* 659 F.3d 1212, 1214–15 (8th Cir. 2011) (plaintiffs may not use voluntary dismissal rule to evade federal removal jurisdiction); *Hargis v. Access Capital Funding LLC*, 674 F.3d 783 (8th Cir. 2012) (district court properly ignored amended complaint that on its face, sought to limit case to Missouri only class so as to bring case under $5 million amount in controversy where original pleading at time of removal exceeded that amount due to nationwide class allegation; CAFA jurisdiction retained).[1]

7. These broad precepts set the jurisdictional tone of this removal. They also frame the fundamental, binary jurisdictional question before this Court: Has Plaintiff Karr engaged in prohibited jurisdictional gamesmanship to defeat KCL's right to have the entirety of this interstate class action dispute resolved in Federal court (and its concomitant right of CAFA removal) by hauling Missouri citizens away from the national class action already pending in *Meek*, and re-boarding them as nominally distinct class members in a Missouri state court action superficially lacking minimal diversity? Or, on the other hand, was Plaintiff Karr—represented by the same lawyers as in *Meek*—simply the "master of his complaint" when he abandoned the *Meek national* class action CAFA case already before this Court, and—a few minutes before—restated the very same claims in the State Court Case in the guise of a free-standing Missouri state court class action ostensibly beyond the reach of a CAFA removal?

---

[1] *"CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction." Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008).

3
Case 4:19-cv-00882-BP   Document 1   Filed 11/01/19   Page 3 of 17

8. We submit that to pose these questions is to answer them, and if form is not to be placed over substance, and if the definition of "action" is viewed realistically and practically, this litigation in its entirety is within CAFA despite class counsel's jurisdictional end-run.

9. What has been done here is a case study in a prohibited evasion of CAFA jurisdiction for a national class action otherwise, and formerly, within the scope and reach of that important statute.

## II. CASE HISTORY

### A. *Meek* is filed

10. This jurisdictional tale begins with *Meek*, filed in this Court on June 18, 2019. *Meek* is a paradigmatic CAFA case, and was filed as such. *Meek,* Case No. 4:19-cv-00472-JTM, ECF No. 1. It was filed as a 50 state putative class action claiming breach of contract. The gravamen of the allegations in *Meek* is that KCL falsely promised that it had not considered and would not consider anything other than expected mortality in setting cost of insurance rates; systematically breached its promise immediately upon issuance of the policies, wherever issued; and continued to breach its promise in the same way until present time. *Meek* alleges damages for the resulting overcharges. As *Meek* was originally constituted, plaintiff herein—David Karr—was a putative class member. It was a putative national 50 state class, after all, encompassing Mr. Karr, an alleged citizen of Missouri. Plaintiff Meek himself claimed to be an adequate and typical representative of all putative class members, to include Karr himself and all the Missouri citizens now proceeding under the flag of the *Karr* case that was to come.

### B. *Karr* is Filed

11. The first visible thickening of the jurisdictional plot happened at 4:25 p.m. on October 1, 2019. On the same day the *Meek* First Amended Complaint was filed (October 1, 2019)—but 48 minutes prior to such Amended filing—the *Karr* case was filed (thereby carving

out Missouri citizens) in the Circuit Court of Jackson County, Missouri by the same lawyers who represent the putative class in *Meek*. The *Karr* case was filed nominally on behalf of all "Missouri citizens" alleging against KCL the very same breach of contract theories of liability placed at issue in *Meek*. While Karr is an alleged Missouri citizen who seeks to represent a class of Missouri citizens, his alleged claims are virtually legally and factually indistinguishable from those alleged in *Meek*. The *Karr* Petition attached hereto as Exhibit B and the Amended *Meek* Complaint is attached hereto as Exhibit C.

12. The chart below compares select allegations in the *amended* Meek case and the *Karr* case state court petition (filings separated by only 48 minutes and two courts):

| ***Amended Meek Case (Federal Court)***, attached hereto as **Exhibit C**. | ***Karr Case (Missouri State Court)***, attached hereto as **Exhibit B**. |
|---|---|
| **Ex. C, Am. Compl. ¶ 1:**<br><br>This is a class action for breach of contract and conversion to recover amounts that Defendant charged Plaintiff and the proposed class in excess of amounts authorized by the express terms of their life insurance policies. Plaintiff's claims are supported by the written provisions of his policy, which are materially the same as those of other policies held by the members of the proposed class. | **Ex. B, Pet. ¶ 1:**<br><br>This is a class action for breach of contract and conversion to recover amounts that Defendant charged Plaintiff and the proposed class in excess of amounts authorized by the express terms of their life insurance policies. Plaintiff's claims are supported by the written provisions of his policy, which are materially the same as those of other policies held by the members of the proposed class. |
| **Ex. C, Am. Compl. ¶ 3:**<br><br>Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Defendant breaches the policy by deducting charges from Plaintiff's cash value in excess of the amounts specifically permitted by the policy. Defendant has breached the policy repeatedly and continues to do so. | **Ex. B, Pet. ¶ 3:**<br><br>Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Defendant breaches the policy by deducting charges from Plaintiff's cash value in excess of the amounts specifically permitted by the policy. Defendant has breached the policy repeatedly and continues to do so. |

| | |
|---|---|
| **Ex. C, Am. Compl. ¶ 18:**  Plaintiff's Policy and the Class Policies are permanent life insurance, meaning their purpose is to provide insurance protection for the life of the insured. | **Ex. B, Pet. ¶ 22:**  Plaintiff's Policy and the Class Policies are permanent life insurance, meaning their purpose is to provide insurance protection for the life of the insured. |
| **Ex. C, Am. Compl. ¶ 54:**  Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following class:  All persons who own or owned a life insurance policy issued or administered by Defendant, the terms of which provide or provided for: (1) an insurance or cost of insurance charge or deduction calculated using a rate that is determined based on Defendant's expectations as to further mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest-bearing, or savings component; and (4) a death benefit. | **Ex. B, Pet. ¶ 57:**  Plaintiff brings this action on behalf of himself and all **Missouri citizens** similarly situated, and seeks to represent the following class:  All **Missouri citizens** who own or owned a life insurance policy issued or administered by Defendant, the terms of which provide or provided for: (1) an insurance or cost of insurance charge or deduction calculated using a rate that is determined based on Defendant's expectations as to further mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest-bearing, or savings component; and (4) a death benefit. (emphasis added). |
| **Ex. C, Am. Compl. ¶ 59:**  There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendant's actions that are common to the class include, without limitation:  (a) Whether Defendant is permitted by the Class Policies to determine cost of insurance rates that are not based on its expectations of future mortality experience; | **Ex. B, Pet. ¶ 62:**  There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendant's actions that are common to the class include, without limitation:  (a) Whether Defendant is permitted by the Class Policies to determine cost of insurance rates that are not based on its expectations of future mortality experience; |
| **Ex. C, Am. Compl. ¶¶ 64-96** (asserting counts for (1) Breach of Contract (cost of insurance charge); (2) Breach of Contract (expense charge); (3) Breach of Contract | **Ex. B, Pet. ¶¶ 67-99** (asserting counts for (1) Breach of Contract (cost of insurance charge); (2) Breach of Contract (expense charge); (3) Breach of Contract (improving expectations |

| | |
|---|---|
| (improving expectations as to future mortality experience); (4) Conversion; and (5) Declaratory and Injunctive Relief) | as to future mortality experience); (4) Conversion; and (5) Declaratory and Injunctive Relief) |
| **Ex. C, Am. Compl. ¶¶ 96:**<br><br>Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy and Class Policies, and from continuing to collect unlawfully inflated charges in violation of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies in regards to its assessment of charges against Plaintiff and class members' cash values. | **Ex. B, Pet. ¶¶ 99:**<br><br>Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy and Class Policies, and from continuing to collect unlawfully inflated charges in violation of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies in regards to its assessment of charges against Plaintiff and class members' cash values. |

### C. *Meek* is Amended

13. *Meek* had been sitting idle for nearly three months. Then, on September 10, plaintiff served KCL. By agreement, the date for a responsive pleading in *Meek* was extended (on September 25) until October 31, 2019.

14. The jurisdictional plot almost immediately thickened again, mere minutes after *Karr* was on file, on the same day. *Less than an hour after the Karr case was filed in state court, Meek was amended.* On October 1, 2019, at 5:13 p.m., a First Amended Complaint was filed in *Meek* (as a matter of right). In the First Amended Class Action Complaint in *Meek nothing changed* except that Plaintiff recast the class definition to *exclude* all persons who are members of the putative class *Karr* (the same State Court Case which is hereby removed to this Court). Everything else about *Meek* stayed the same in this ever so slightly amended complaint.[2]

15. The chart below compares the class definitions in *Meek* pre- and post-amendment:

---

[2] Notably, Federal Rule 82 provides that "These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts."

| *Meek Class Definition – Original Complaint* | *Meek Class Definition – Amended Complaint* |
| --- | --- |
| **Meek, ECF No. 1, Compl. ¶ 55**<br><br>All persons who own or owned a life insurance policy issued or administered by Defendant, the terms of which provide or provided for: (1) an insurance or cost of insurance charge or deduction calculated using a rate that is determined based on Defendant's expectations as to further mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest-bearing, or savings component; and (4) a death benefit. | **Ex. C, Am. Compl. ¶ 54:**<br><br>All persons who own or owned a life insurance policy issued or administered by Defendant, the terms of which provide or provided for: (1) an insurance or cost of insurance charge or deduction calculated using a rate that is determined based on Defendant's expectations as to further mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest-bearing, or savings component; and (4) a death benefit. |
| **Meek, ECF No. 1, Compl. ¶ 56:**<br><br>Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family. Also excluded from the class is any policy that explicitly discloses all of the factors Defendant used to calculate its rates and charges. | **Ex. C, Am. Compl. ¶ 55 (emphasis added):**<br><br>Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family. Also excluded from the class is any **variable life insurance contract or** policy that explicitly discloses all of the factors **on which** Defendant **based its determination of cost of insurance** rates and charges. **Also excluded from the class are policy owners falling within the class definition set forth in *Karr v. Kansas City Life Insurance Company*, pending in Jackson County, Missouri.** (emphasis added). |

16. Because all would-be *Karr* class members (formerly *Meek* putative class members) are limited to "Missouri citizens," and because KCL is a Missouri corporation, the CAFA jurisdictional ingredient of "minimal diversity" is ostensibly missing from *Karr*, but this is true if and only if the Court does not "look behind the pleadings," as the Supreme Court cases

and other cases indicate will at times required to prevent gaming of the jurisdictional rules, *and* if and only if the Court declines to see *Meek* and the State Court Case as functionally and substantively the same "action."

### D. The Net Effect

17. Let us pause to review the result of class counsel's jurisdictional gambit.

18. The day *before* the *Meek* First Amended Complaint was filed, *Meek* was a 50 state class action pending *in this Court* purporting to vindicate the class wide state law breach of contract rights of KCL life insurance policyholders—including Mr. Karr and including all Missouri citizens who own or ever owned one of the subject KCL life insurance policies—with no temporal limitation. CAFA jurisdiction over this nationwide putative class action was properly alleged and was fully invoked.

19. The day *after* the *Meek* First Amended Complaint was filed—and a mere 48 minutes after the *Karr* case was filed in Missouri state court—two things were true, that were not true before: The *Meek* case purportedly went from being a 50 state putative class case to being a 49 state putative class case, inexplicably no longer advancing class claims for Missouri citizens. And the very class claims that were eliminated from *Meek,* root and branch, inexplicably assumed the form of the Jackson County, Missouri State Court Case in which Mr. Karr, formerly a putative class member in *Meek*, became the class representative in the *Karr* case. Naturally, this had the desired effect of nominally eliminating minimal diversity under CAFA: The class in the State Court Case is defined in terms of only "Missouri citizens" while KCL is a Missouri corporation with its principal place of business in Missouri.

20. There is no colorable rationale—other than evasion of CAFA—for the amendment in *Meek* to eliminate arbitrarily the claims of Missouri citizens and to repackage them as the State Court Case. These persons had previously been at home in a putative

9

nationwide class action under CAFA. The timing and the continued mirror-image nature of the now-split controversy admits of no other conclusion.

21. Even a cursory review of the *Meek* First Amended Complaint and the *Karr* case petition shows that the claims in *Meek* are so related to claims in the *Karr* case that they form part of the same case or controversy under Article III of the United States Constitution. The cases allegedly arise from the same policy documentation and contract terms, advance identical alleged theories of contract liability, breach and damages, and seek identical declaratory and injunctive relief. It is difficult to imagine a more calculated effort to avoid federal court CAFA jurisdiction as to the claims of Missouri citizens, the very jurisdiction that was affirmatively requested and invoked before October 1, 2019. Forum shopping to evade CAFA emerges as the only logical explanation.

### III.  REMOVAL IS PROCEDURALLY PROPER AND TIMELY

22. Against this backdrop of these extraordinary machinations, the statutory grounds for this removal are the conventional and relevant provisions of the Class Action Fairness Act of 2005, as amended, codified at 28 USC §§ 1332, 1453 and 1711 ("CAFA"), and 28 USC §§ 1367, 1441 and 1446.

23. KCL was served with the summons and the petition in the *Karr* State Court Case on October 4, 2019. This Notice of Removal has been filed within 30 days of service of process and is therefore timely under 28 USC § 1446(b). As required by 28 USC § 1446(a), true and correct copies of all process, pleadings and orders served on KCL are attached hereto. Exhibit A is a copy of the docket sheet in the State Court Case. Exhibit B includes the pleadings, orders and other papers contained in the file State Court Case.

24. Venue is proper in this Court (and the division within this Court) in that it corresponds to the district and division within which the State Court Case was filed. See 28 U.S.C. § 1441(a); Local Rule 3.1(a).

## IV. THIS CASE IS WITHIN THE COURT'S REMOVAL SUBJECT MATTER JURISDICTION

### A. CAFA

25. Jurisdiction over this matter exists under 28 U.S.C. §§ 1332(d) and 1453 pursuant to provisions incorporated therein by CAFA. Congress passed CAFA to expand the jurisdiction of the federal courts and to prevent plaintiffs from "gam[ing] the system" to remain in "lawsuit friendly" state courts, Sen. Rep. No. 109-14, at 10-12.

> Because of perceived 'abuses of the class action device,' Congress enacted CAFA to provide, *inter alia*, for 'Federal court consideration of interstate cases of national importance.' Accordingly, CAFA grants broad federal jurisdiction over class actions and establishes narrow exceptions to such jurisdiction. *See* S.Rep. No. 109–14, at 43 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 41 (CAFA 'is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.').

*Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (internal citations omitted).

26. "Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, i.e., any class member and any defendant are citizens of different states; and there are at least 100 members in the class." *Hargis v. Access Capital Funding, LLC,* 674 F.3d 783, 788 (8th Cir. 2012).

27. The *Karr* case satisfies all three CAFA criteria when the litigation is viewed through the lens of CAFA's purposes and when analyzed substantively as the same "action" and

as part and parcel of an effort by class counsel in *Meek* to segment the Missouri element of that case into a "new" case standing beyond the sweep of CAFA removal jurisdiction.

28. The petition in the State Court Case alleges that there are at least "hundreds" of affected KCL policyholders. (Ex. B, *Karr* Pet. ¶ 60.) There is no temporal limitation within the *Karr* case class definition. Mr. Karr's policy has a face value of $50,000. (*Id.* at ¶ 14.)

29. KCL represents that there are in excess of 6,000 life insurance policies (as generally described in the State Court Case) for which there is a Missouri address-of-record. On its own showing, then, there is over $300,000,000 worth of in-force KCL life insurance policies (measured by face value) "in controversy" in this case if Mr. Karr's $50,000 policy is viewed as typical of those in the putative class and correlated to Missouri addresses-of-record (which roughly but by no means accurately or completely correspond to policies owned now or in the past by "Missouri citizens"). Moreover, there is certainly far more than that "in controversy" if the *Karr* case is viewed as a *de facto* component part of the "action"[3] represented by *Meek* from which it was arbitrarily and artificially excised.

---

[3] The removal statutes apply to civil "actions." CAFA applies to class "actions." It is useful to remember just what that term has been interpreted to encompass:

> *The word "action" has been commonly understood to denote not merely a "claim" or "cause of action" but "the entire controversy," and is so used in the Federal Rules of Civil Procedure.* (emphasis added). Harvey Aluminum, Inc. v. American Cyanamid Co., 203 F.2d 105, 108 (2d Cir.), *cert. denied*, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953). Thus where Congress has used the term "actions" or "action" the courts have consistently permitted the district courts to consider state claims where the criteria set forth in *United Mine Workers of America v. Gibbs*, *supra*, have been met. An "action" has been treated as equivalent to a "case" in the constitutional case. *See, e. g., Hagans v. Lavine,* 415 U.S. 528, 536-43, 94 S.Ct. 1372, 1378-82, 39 L.Ed.2d 577 (1974) (civil rights); *Leon Finker, Inc. v. Schlussel*, 469 F.Supp. 674, 679-80 (S.D.N.Y.) *aff'd*, 614 F.2d 1288 (2d Cir. 1979) (trademark); *International Controls Corp. v. Vesco*, 593 F.2d 166, 175 n. 5 (2d Cir.), cert. denied, 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979) (securities); *Klein v. Tabatchnick,* 610 F.2d 1043, 1051 (2d Cir. 1979) (securities); *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228, 1247 (2d Cir. 1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980) (labor);

30. And this does not even begin to tally up the value of the amount "in controversy" in the *Karr* case given its request for attorneys' fees, declaratory/injunctive relief and prejudgment interest.

31. "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

32. Minimal diversity for CAFA purposes exists in the State Court Case if and to the extent that the Court treats it functionally and practically as an integral part of the *Meek* "action," eschewing the forms of separateness generated by class counsel's jurisdictional artifice.

### B. 28 U.S.C. § 1367 - Supplemental Jurisdiction

33. The class claims in *Meek* and the class claims in the State Court Case clearly derive from the same core nucleus of operative fact. *See* ¶¶ 10-16, *supra*. In fact, before October 1, 2019, they were more than that, joined together as they were in the *Meek* case as putative national class claims. They are by any reckoning, so related factually and legally, that they form part of the same case or controversy within the meaning of Article III of the United States Constitution even though they may not qualify for class treatment given the various pertinent factors of Federal Rule 23. *See* note 3, *supra*, as to the definition of an "action" under the Federal Rules of Civil Procedure.

---

*Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1073 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (antitrust).

*Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719 (2d Cir. 1980) (emphasis added).

34. As the Court has original jurisdiction over *Meek* under CAFA, it would be within the Court's discretion to exercise supplemental jurisdiction over the Missouri claims in the *Karr* case by treating *Karr* for what it is, not really a separate case, as class counsel would like it to be, but the same "action:" Merely an expression, extension or reiteration of the CAFA-based claims in *Meek* (which they were) that should be deemed a component part of *Meek* (which it is) and warranting an exercise of supplemental jurisdiction. Supplemental jurisdiction principles apply in the CAFA context without regard to CAFA.[4]

35. As the Eighth Circuit has explained:

> **[A] district court is required to exercise supplemental jurisdiction over claims 'that are so related to [the] claims in the action within such original jurisdiction that they form part of the same case or controversy [under the Constitution] unless one of the enumerated circumstances giving the district court discretion to decline jurisdiction is present**. 28 U.S.C. § 1367(a); *see also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters,* 645 F.3d 954, 963–64 (8th Cir. 2011); *McLaurin v. Prater,* 30 F.3d 982, 984–85 (8th Cir. 1994). One such circumstance provides a court with discretion to decline jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court's discretion in these circumstances is very broad. *Clark v. Iowa State Univ.,* 643 F.3d 643, 645 (8th Cir. 2011) (*citing Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, (2006)) (holding that the district court had authority to exercise jurisdiction over a state-law claim derived from common nucleus of operative fact after dismissing plaintiff's federal claims). In exercising its discretion, the district court should consider factors such as judicial economy, convenience, fairness, and comity. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357 (1988); *Quinn v. Ocwen Fed. Bank FSB,* 470 F.3d 1240, 1249 (8th Cir. 2006) (*per curiam*).

*Brown v. Mortgage Electronic Registration Systems, Inc.*, 738 F.3d 926, 933 (8th Cir. 2013) (emphasis added).

36. Recognizing that substance must prevail over form, this Court should view the *Karr* case for what it is: an artificial and prohibited attempt to evade and reduce the CAFA

---

[4] "CAFA, moreover, does not moot the significance of our interpretation of § 1367, as many proposed exercises of supplemental jurisdiction, even in the class-action context, might not fall within the CAFA's ambit. The CAFA, then, has no impact, one way or the other, on our interpretation of § 1367." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 572 (2005).

jurisdiction this Court undoubtedly possesses in *Meek*. The *Karr* case is the fruit of a stratagem by class counsel to create what is an alternative, narrower, but essentially duplicative case, calculated to inhabit space just beyond the reach of CAFA. If the important national purposes of CAFA are to be respected, class counsel cannot be allowed to trifle with its jurisdictional grant by using the device of an amended complaint filed in *Meek* 48 minutes after a filing in state court (*Karr*) that picks up and runs with the selfsame class allegations eliminated from a case properly before this Court under CAFA.

37. The prohibited forum shopping warning lights are blinking red. It would make a mockery of CAFA to allow *Karr* to evade CAFA removal jurisdiction in this outlandish context.

38. This case should be retained in Federal court where it can be reunited with the *Meek* case for further proceedings. These would include the development of a suitable record for rigorous analysis of relevant Rule 23 factors such as the lack of superiority, the lack of manageability, and the lack of predominance of common questions over individual questions deriving from, among other things, conflicts of laws rules, material variations in applicable state laws and material differences in the scope and effect of applicable statutes of limitations under relevant borrowing statutes.

**WHEREFORE**, Defendant respectfully removes to this Court the State Court Case for all further proceedings.

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: /s/ John W. Shaw
    John W. Shaw (MO Bar No. 26205)
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone: 816-561-7007
    Facsimile: 816-561-1888
    Email: jshaw@berkowitzoliver.com

*Attorneys for Defendant Kansas City Life Insurance Company*

**CERTIFICATE OF SERVICE**

       I hereby certify that on November 1, 2019, I electronically filed the foregoing Notice of Removal with the Clerk of the Court using the CM/ECF system. I hereby certify that I have also e-mailed the foregoing document to the following:

       Patrick J. Stueve
       Ethan M. Lange
       Stueve Siegel Hanson LLP
       460 Nichols Rd., Ste. 200
       Kansas City, MO 64112
       stueve@stuevesiegel.com
       lange@sstuevesiegel.com

       John J. Schirger
       Matthew W. Lytle
       Miller Schirger LLC
       4520 Main Street, Suite 1570
       Kansas City, MO 64111
       jschirger@millerschirger.com
       mlytle@millerschirger.com

       *Attorneys for Plaintiff David B. Karr*

       /s/ John W. Shaw
*Attorney for Defendant*
*Kansas City Life Insurance Company*